All right, our third case today is number 21-13474, Sheila Munoz v. CitiMortgage. Mr. Charles. Good morning, your honors. May it please the court, I'm James Charles representing the appellant Sheila Munoz. This is a RESPA action that's based upon CitiMortgage's failure to adequately respond to Munoz's qualified written requests pursuant to section 2605 sub e of the United States Code. Charles, let me ask you one question, please. We've held that damages are an essential component of a RESPA claim and the district court ruled that with regards to your six claimed items of damages you had not shown them for different reasons. In your brief, you say on page 40 that page limits do not allow you to provide space to explain those errors. Why isn't that fatal to your claim? In other words, if you lose on the damage portion of the claim, everything else becomes irrelevant, right? Correct, your honor. As we point out in our reply brief, that was a typo and we showed that provision in our brief with the one below it and what it meant to say is time, page limits, the ability to dispute all of the issues. So that was a typo. But counsel, even assuming that it was a typo, we still have the same problem which is that it doesn't seem like you address the damages issue and without damages, then the rest of your brief doesn't really matter because we're not able to do anything about it if you haven't shown that you had damages. So I guess my first question related to Judge Jordan's question would be why isn't it forfeited here by your failure to address it in the briefing? And second, if maybe I missed it, maybe it's in there and I just didn't see it, why is it that you've sufficiently addressed it to allow us to decide in your favor? Thank you, Judge. The response to that is we do argue damages. There's a different, the issue of damages comes to this court at a different level than the other issue, whether city mortgage adequately responded to the qualified written request because you notice this move for partial summary judgment. The burden is different with city mortgages summary judgment because they have to prove the absence of any genuine issue of fact for damages. So we, in the brief, we identify the specific portions of the record where there's evidence of damages and so maybe it's coming across from above that we are not addressing it, but what we're saying is that there's so much evidence of damages. You mean you did it in the factual background, is that what you're saying? Yes, in the brief. Okay, so then the question is where is the argument that goes with it? Is there an argument that goes with the factual recitation with respect to damages? There may be. I may have missed it. That's certainly possible and so I guess I'm asking for your help in directing me to the portion of the argument in the briefs that would show that. Yes, Your Honor, and thank you for asking about that. Page 34, it's the third issue in the initial brief. We point out how the district court misconstrued the undisputed facts and applicable law and as a result erred in finding that city mortgage adequately responded, that you notice has failed to establish damages. And we go through this on page 37. And the one point to look at here is that in the middle district of Florida, the procedures for summary judgment is that you have a statement of undisputed facts that points to evidence in the record and then a response. And if you deny any of those, you have to point to evidence in the record. If you read the order, it doesn't do that. It points to no issues of fact. So it's hard to discuss. I think that obscures the discussion of the sufficiency of the evidence because the district court did not go that route. I know. So this is Judge Newsom and not to pile on, but I mean, I think the difficulty is not what happened in the district court. The difficulty is what happened in your brief to this court. I mean, I've minded as well and just can't find in the brief where you say much of anything about damages. And I have to confess, I'm not all that moved by the sort of the bookmark that says the page limitations prevent us from getting into it because I just had my clerk check and you filed an 11,000 word brief. Your limit is 13,000 words. Well, Judge, I created the situation by making that statement, but on page 40 of the brief, we talk about the evidence and we reference the footnote 50, Munoz's response to the city mortgage's motion for summary judgment. In the response, Sheila Munoz, she has an affidavit showing her damages. And there's attached documentation, city mortgage made no objection to this evidence, no rebuttal to this evidence. And then there's two other affidavits from Sheila Munoz where she goes through her damages. None of these, none of this evidence was disputed or rebutted by city mortgage. Let me turn to at RESPA issues. So you have a chance to at least address it, Mr. Charles. So your clients asked for the total amount that was due and owing as of the present date. And their letter was sent on May 16th of 2019. City mortgage responded that it had transferred the loan to CENLAR on April 1st of 2019, a month and a half earlier. And therefore CENLAR had the current amounts due as of the date of the letter. What is wrong with that response? What's wrong, are you asking in regard to the notice of error? No, that's your request for information. That's item two of your request for information. In the request for information, we point out in the brief that it's not good enough for city mortgage to just punt on that request that somebody else has the records because RESPA requires them to obtain those records. And only- What's your best authority for that proposition that city mortgage has to go out and get the records from the new entity that has the loan? No, we cite that in the brief. I mean, they have to do a reasonable investigation, of course. But if they don't have the loan anymore, why can't they just refer the Munozes to CENLAR, which has their current balance due and owing? Page 30 in our initial brief, Your Honor. So, we point out the Sacramento case, which says that a lender, a prior lender or servicer, has to go get the records from the current servicer or lender? Then we cite the works case versus specialized loan servicing. And the court pointed out that the servicer, and it's citing Sacramento, the servicer did not obtain information from the to correct- That's very different. That's different than if you're the servicer who has the loan now to figure out the amounts due, you may have to contact the prior servicer. But if you've transferred the loan to a subsequent servicer, what obligation do you have to go get those new records? Well, Judge, the language of the statute is the same either way, number one. Number two, is that the information is all in the records of City Mortgage. I mean, City Mortgage concedes in their answer that they transferred a suspense balance and account deficits to SEMLR. So, the damages that we're addressing and the information that we're seeking is from City Mortgage. It's what happened and what do your cases say? In the notice of error, we point out that there's errors in statements, in the monthly statements, and we're asking for an explanation of that and the records behind that. And so, it's kind of a red herring that just pass this on to SEMLR because the information that we're seeking is really from City Mortgage. All right, Mr. Charles, thank you very much. We'll give you your full time for rebuttal. Mr. Attori. May it please the Court. Thank you, Your Honor. Paul Attori from the Aikerman firm for City Mortgage. The District Court correctly granted summary judgment in favor of City Mortgage as the Court has observed two independent bases, defining no genuine issue of material fact with respect to either the adequacy of City Mortgage's response to the appellant's QWR or with respect to their alleged damages. And since the Court has focused this argument, I will discuss the damages issue. Before you do that, I have a couple of questions. We may not reach them, but I have a couple of questions about City Mortgage's responses. So, Mr. and Mrs. Munoz asked in item number 12 of their request for information for any notes related to communications with themselves. And City Mortgage's response was, this information is confidential, proprietary, or privileged. How is that so? If you have a note inside the City Mortgage file that says, the Munoz's called today to find out whether their escrow account is overdue or has a problematic balance, and a City Mortgage person writes that note in the file, how is that proprietary, confidential, or privileged? I don't think that it's, I think under the circumstances, the cases, the case law and the statute say that you can, that there's no, that does not necessarily relate to servicing. And there is no obligation to provide that information in response to a request for information. But that doesn't make it privileged. That's, I mean, that doesn't make it privileged. How does it make it privileged? I think the response was that it was confidential, proprietary, or privileged. And I would point out that at the outset of the response, City Mortgage did note that the, this, I believe it's a, you know, there are 13 requests for information and five notices there. City Mortgage did point out that this was an overbroad request. And the Official Bureau interpretations with respect to overbroadness discuss that specifically, just give me a moment, with respect to a request for information, the Official Bureau interpretation of 1024-36 notes that an overbroad request includes, requests for information that seek documents related to substantially all aspects of mortgage origination, mortgage servicing, mortgage sale or securitization and foreclosure, including, for example, requests for all mortgage loan file documents, recorded mortgage instruments, servicing instruments, servicing information and documents, and sale and securitization information and documents. So that covers item number 13 from their request for information, which sought all information in the servicing file for the Munozos. I get that, but I don't see that as a proper response to number 12. I mean, how can it be confidential? How can it be privileged? Or how can it be proprietary for a City Mortgage employee to jot down what the Munozos discussed with them on a call? And what if a City Mortgage person said, oh, my God, we have made an error. We forgot to credit this mortgage payment that you made in May of 2018 to your account. How can you withhold that? Your Honor, I think we cited Maldonado v. Aquin from the Southern District of Florida for that do not relate to servicing. And that the requirements for requests for information and for notices of error are specific, and they need to relate to servicing. Simply calling or writing to your servicer and asking for all the notes in the file does not necessarily fulfill that requirement. I speak only for myself, and we may not reach this issue. But some of City Mortgage's responses here were, in my view, at summary judgment, clearly insufficient. I mean, I don't see how you do that. Simply say, blanket confidential, proprietary, privileged on things that don't meet any of the three standards. But I've said my two cents, so you can go ahead to the argument that you were going to address. Actually, before you do that, I have a question sort of similar. On RFI number two, where City Mortgage referred to SEMLR, I guess my question is, why didn't City Mortgage have to the information that it did have? I understand your point about you don't have SEMLR's information, but City Mortgage did have some information, it seems. Why wasn't it required to provide responsive information that it did have? With respect to request number two, Your Honor? Yeah, so the way that we argued at summary judgment and the district court adopted our argument with respect to the idea that that request for information was, in fact, a request for a payoff. If you ask for all amounts due and owing as of the present date, that's a request for a payoff RESPA. And we cited Brocco v. PNC Mortgage, which was a decision of the district court in 2016 for that proposition, and it's cited in our answer brief to this court. Okay, and is that your position with respect to all requests made that pertain to SEMLR information, information that referred to where you referred to SEMLR? I believe that that is the only item in dispute that we referred to SEMLR, or that we referred to SEMLR having the appropriate information, and we relied on, we relied in our brief, pardon me, in our summary judgment to the Wirtz case for that proposition, that there is the possibility that a successor servicer may have an obligation to get information from a prior servicer, but that the obligation does not flow in the opposite direction. And so, to me, it would be somewhat irresponsible for City Mortgage to say, well, this is what we know as of this date, but, you know, this is a year and a half later, month and a half later, as Judge Jordan pointed out, that to me there are implications that arise from a servicer saying, you owe this amount of money as of this date, versus actually answering the borrower's question with respect to amounts to an amount of money as of the present date. Why couldn't you say, we had the, we had the account through this date, as of that date, you owed this amount of money. If you want other information, you need to get it directly from SEMLR. Why is that inappropriate? Sorry, that was provided, I mean, if you look at the payment history that was provided, it does, if you look at the balances that were transferred, all that information is there. You can see what the principal balance was, you can see what the escrow balance was, you can see what the, as of the point of time at the service release, that information is part of the payment history that was provided in response to, I think it was request for information number five. So you provided a payment history and... So I reviewed the payment history, and there is a list of abbreviations, but it doesn't seem like it covers all of them, and just, and it could just be, it certainly could be my deficiency, but it wasn't clear to me when I reviewed the payment history. It looked like certain payments were made, and then there were subtractions, and I just couldn't tell what was going on. I don't know if you want to address that, or why it wasn't necessary to provide a clear sort of key to what was happening there. Your Honor, it's my rake-straw matter, which was too, which came too late for our answer brief, but that, where that borrower did not reach out for help understanding the allegedly incomprehensible information she was given, but instead continued to send QWRs. There was a footnote that was, I think it was footnote six, that the court included, and so I don't, I believe there is authority, and I'm looking for it now, but I think that the, this court has held that a servicer need not provide information in any specific form, if it is in fact the form that to reformat something, and I would point out that. And then don't you have to provide the information that's necessary to understand the information that you're providing? I mean, it seems like it cannot possibly be the case that in responding to an RFI, I mean, let's say that you kept it, you know, in some kind of code or something, which actually kind of looks like you do, it seems to me you would at least have to provide the key to being able to understand it. You might not have to reformulate it, but you have to explain if it's not obvious how, you know, how you interpret what that information means. Why is that not the case? I, Your Honor, I would, respectfully, I would submit that we did by providing the key or the code sheet. But the code sheet doesn't include all of the codes that are used. I mean, I looked at the code sheet, maybe I missed something, but when I was looking at it, there were certain codes that were on there that I, you know, that were on the information, and I went to check against the key. I could not find those abbreviations or codes in the key, and so it made it very difficult for me to understand what was happening. And I guess my question to you is, don't you have an obligation to provide all of the information that's necessary for someone to make sense of the information you are providing? Regardless of, I agree, you don't have an obligation to reformat it, but don't you have to provide some kind of key that allows a complete understanding of what is going on and the information you provide? Again, I would submit that that was done. I understand that there may be some confusion, but, you know, this is why, presumably, why the appellants had hired an attorney and had him draft the QWR on their behalf, generally. But, I mean, really, how does being an attorney help you to understand abbreviations or codes that are, you know, used only by, presumably, used only by the bank? I mean, how does that shed light on that? Your Honor, I would only say that this court has observed in Bates that facilitation, transparency and facilitation of communication is the goal of RESPA. If there was, if the appellants were confused by what they received, there was a number for further information that they could have contacted and asked questions. But to simply sit back and have the next communication, as it were in this case, be in the form of a summons is not really the goal or the spirit of the RESPA that this court interpreted in Bates. And it's not, the idea that a dialogue is created or that enhanced or, that is the, that is the, that I would say is what RESPA is designed to do. So to the extent that there, you know, questions remain, there should have been some, some follow up at a minimum. I see I'm, I won't have time to address my damages issue. I would just point out that I think, you know, the idea that a single missing word has doomed the initial brief on damages is, is just not, I just don't see how that's possible. And Mr. Charles seems to be suggesting that he can, he's appealing his own judgment and not that of city mortgages. So with that, I will conclude. Thank you. Very much, Mr. Attore. Sure. All right, Mr. Charles, you're to rebuttal. Thank you. Let me address the, the issue of damages. And let me explain why we have this discrepancy. It's because the, the district court does not make any findings of fact. So the burden of proof on, on city mortgages motion for summary judgment is to find that there's no genuine issue of fact, the court didn't make any findings of fact. And so that's what we are. We spend quite a bit of argument on that, but I'm going to go to page 40 of the initial brief where we talk about the fallacies regarding, you know, this is damage. So when we say we're explaining the errors, those are the errors that the district court made in not making any findings of fact. We're not, that's not addressing the sufficiency of evidence for damages because there's overwhelming evidence of damages. And we address that in footnote 50. We say that the district court's reasons for finding that Moses did not establish their damages is also the result of ignoring the undisputed facts and misconstruing the ethical law and footnote 50. But then, but then the very next sentence says page limits don't allow us, don't allow space to explain the errors. However, the errors are apparent when compared to actual undisputed facts and the legal errors are apparent from reading the cases. But see, that's not really an argument. I mean, that doesn't tell us what's wrong specifically. It doesn't point us to, you know, specific parts that of the record that are, you know, and show how they are contradicted or how they contradict the district court's findings. That that's what the problem is. Maybe they, I mean, maybe you have some response and I've missed that. And of course, feel free to let me know. Yes, your honor. That's what I referenced in footnote 50. We're saying the overwhelming undisputed facts, and we, this is a footnote 50 is to me knows his response to city mortgage motion for summary judgment and her affidavit. And if you go, so here's, there's the other problem is we've said you can't incorporate briefs from the district court. If you are making an argument on appeal, you need to make it in your briefs on appeal. And I mean, I did not understand until just now that you meant to incorporate your argument from the district court. But that, that in and of itself raises its own problem. So I want to give you a chance to address that. Yeah, judge. And that is on pages 43 and 40 through 46 of the initial brief. And this is where we're going into the facts. And this is where we discuss the, the, the statements of undisputed facts that are unrebutted in the record. And so that goes to the response. You notice his response regarding damages, and I'll refer it to the court. It's pages 167 to 171 of volume two, I believe of the appendix. Yes. So the, the, the evidence when the burden, when the judge, when the summary judgment does not deal with facts, it deals with allegations and the complaint makes no finding of facts. And we address that when we point out in the initial brief that the under, we spend a lot of time throughout the brief explaining what the undisputed facts are. And so we, we point out that none of those undisputed facts, which are specifically referenced are disputed. And with the burden on city mortgage, so high that they have to show that there's no dispute of fact that there's no genuine issue of fact, they can't do that upon the record. And, and I, I, in hindsight, we didn't emphasize that, but the reason for this discrepancy is we were replying to what the district court said. But we we've clearly a pointed to the sufficient evidence and the insufficiency of the evidence regarding the finding on damages in city mortgages motion. Right. Mr. Charles, thank you very much, Mr. Tory. Thank you as well. We'll take the case under advisement. Thank you.